Virginia **ELSESSER and Courage Verzicco, co-guardians of the Estate and Person of Carolyn Verzicco, an incompetent**

v.

**HOSPITAL OF THE PHILADELPHIA COLLEGE OF OSTEOPATHIC MEDICINE, PARKVIEW DIVISION, a Pennsylvania Corporation, et al.**

C.A. No. 92–3045.

United States District Court,
E.D. Pennsylvania.

Sept. 30, 1992.

Gary M. Gusoff, Philadelphia, Pa., for plaintiffs.

Gilbert F. Casellas, Kimberly H. Humes, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

■ Plaintiffs originally brought this personal injury action in the Court of Common Pleas of Philadelphia County against a hospital, several doctors in the emergency room of the hospital, plaintiffs' incompetent's primary care physician, and United States Health Care Systems of Pennsylva-

nia, Inc. ("U.S. Health Care"), a health maintenance organization ("HMO"). U.S. Health Care subsequently removed the action to this court pursuant to 28 U.S.C. § 1441(b), claiming that the causes of action plaintiffs assert against it arise under the laws of the United States. The suit arises out of personal injuries allegedly sustained by plaintiffs' incompetent Carolyn Verzicco ("Verzicco") as a result of care she received at the Hospital of the Philadelphia College of Osteopathic Medicine, Parkview Division ("Parkview") in connection with U.S. Health Care's selection of primary care physicians. U.S. Health Care filed a motion to dismiss the Complaint against it for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its motion, U.S. Health Care argued that plaintiffs' state law claims asserted against it should be dismissed as pre-empted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs responded by filing a motion to remand the entire action to the state court on the basis that the state claims are not preempted by ERISA. By Memorandum Opinion and Order dated July 13, 1992, we denied the motion to dismiss and granted the motion to remand. Presently before the court is the motion of U.S. Health Care for reconsideration [1] or, in the alternative, for certification for immediate appeal under 28 U.S.C. Section 1292(b). For the reasons which follow, the motion for reconsideration is granted in part and denied in part and the motion for certification is denied.

Accepting the allegations in the complaint as true as we must when considering a Rule 12(b)(6) motion, the relevant facts are as follows:

Verzicco worked for a company that provided its employees with a U.S. Health Care benefits plan.[2] Once an employee chooses to become a member of this plan, the employee selects out of a directory provided by U.S. Health Care a primary care physician. The primary care physician supervises, coordinates and provides initial care and basic medical services to its members. The primary care physician also refers the member for specialist care and maintains the continuity of patient care. Defendant Dr. Leonard Harman was Verzicco's primary care physician. Verzicco had been under Dr. Harman's care since November of 1977.

On July 30, 1990, Verzicco visited Dr. Harman's office complaining of chest pain, mild shortness of breath, and numbness in her shoulders lasting about twenty minutes. Dr. Harman measured Verzicco's blood pressure, which was 150/88, and took an electrocardiogram which revealed an abnormality in t-waves. Dr. Harman ordered blood tests and the use of a Halter Monitor. After approximately one day, Dr. Harman discontinued use of the Halter Monitor because he was told by U.S. Health Care that it would not pay for the service of the Halter Monitor. Dr. Harman did not read the results of the day Verzicco wore the Halter Monitor.

On August 14, 1990, Verzicco began experiencing chest pains radiating across her shoulders, down her arm and up her neck. She went to the Emergency Room at Parkview where she was examined by the attending physicians, defendants Robert McAndrew, M.D. and Dr. Potman. Verzicco's blood pressure was 180/110 and the doctors ordered an electrocardiogram which showed evidence of anterior wall

---

1. Plaintiffs argue that 28 U.S.C. § 1447(d) precludes a district court from reconsidering an Order remanding a case to the state court. Section 1447(d) states that, except for civil rights cases removed pursuant to 28 U.S.C. § 1443, "[a]n order remanding a case to the State Court from which it was removed is not reviewable on appeal or otherwise ..." We read this language to preclude only certain *appellate* review of a remand order. Indeed, we have located four decisions wherein a district court entertained a motion for reconsideration of an Order remand-

ing a case to state court. *See e.g. State of Fla. v. Simanonok,* 850 F.2d 1429 (11th Cir.1988); *Smith v. Anadrill, Inc.,* 762 F.Supp. 1267 (S.D.Tex.1991); *Knickerbocker v. Chrysler Corp.,* 728 F.Supp. 460 (E.D.Mich.1990); *Litka v. University Of Detroit Dental School,* 610 F.Supp. 80 (D.C.Mich.1985).

2. It is undisputed that this plan constitutes a "employee benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1) and (3).

ischemia or infarction. Verzicco was given medication and was directed to return if her condition worsened. She was also instructed to contact Dr. Harman on Thursday, August 16, 1990.

The following day, while driving her car, Verzicco experienced extreme chest pain and passed out. She was rushed to Parkview where prolonged resuscitative efforts were performed. However, Verzicco remained unconscious with cardiac arrest and to this day has not regained consciousness. Verzicco suffered irreversible anoxic encephalopathy, which is expected to last for the rest of her life. Verzicco remains at the Fox Nursing Home and Rehabilitation Center where she has been in a persistent vegetative state.

In their complaint, plaintiffs assert, *inter alia,* claims for negligence, misrepresentation, and breach of contract against U.S. Health Care with regard to the treatment rendered to Verzicco by her primary care physician. In its motion for reconsideration, U.S. Health Care continues to insist that all three claims are pre-empted by ERISA and should, therefore, be dismissed. We will address all three claims *in seriatim.* But first a word about ERISA pre-emption in general.

The pre-emption section of ERISA, 29 U.S.C. § 1144(a) provides in relevant part that "... the provisions of this subchapter ... shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan ..." In determining that a state common law claim for tortious breach of contract was pre-empted by ERISA, the Court in *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987) described the inclusive nature of the pre-emption clause:

In both *Metropolitan Life [Ins. Co. v. Massachusetts,* 471 U.S. 701, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985)] (citation omitted) and *Shaw v. Delta Airlines, Inc.,* [463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)] (citation omitted), we noted the expansive sweep of the preemption clause. In both cases 'the phrase 'relate to' was given its broadest common-sense meaning, such that a state law 'relates to a benefit plan' in the normal sense of the phrase, if it has a connection with or reference to such a plan.' (citations omitted). In particular we have emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'

The Court re-emphasized the broad scope of the pre-emptive effect of ERISA in *Ingersoll–Rand Company v. McClendon,* 498 U.S. 133, ——, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990).

'The pre-emption clause is conspicuous for its breath (citation omitted).' Its 'deliberately expansive' language was designed to 'establish pension plan regulation as exclusively a federal concern (citation omitted).' The key to § 514(a) is found in the words 'relate to.' Congress used those words in their broad sense rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA (citation omitted).' Moreover, to underscore its intent that § 514(a) be expansively applied, Congress used equally broad language in defining the 'State law' that would be pre-empted. Such laws included 'all laws, decisions, rules, regulations or other state action having the effect of law.' 514(c)(1), 29 U.S.C. § 1144(c)(1).

See also, *The 1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers,* 968 F.2d 401 (3d Cir.1992).

With those principles in mind, we now turn to plaintiffs' three state law claims to determine if indeed they are pre-empted by ERISA. We begin with plaintiffs' negligence claim. In that claim plaintiffs allege:

(i) All of the acts referred to above by all of the individual physicians and professional corporation physician, as well as, defendant Parkview, are imputed to defendant, U.S. Health Care, particularly since plaintiff, Verzicco, looked to U.S. Health Care for care and U.S. Health Care held out Dr. Leonard Harman, P.C. and Leonard Har-

man, M.D. as its employee. Verzicco justifiably relied upon the care and skill of Leonard Harman, M.D. based, in part, upon the assurances of defendant, U.S. Health Care, that Dr. Leonard Harman, P.C. and Leonard Harman, M.D., the primary care physician, were competent and qualified;

(ii) U.S. Health Care failed to exercise reasonable care in selecting, retaining and evaluating plaintiff's primary care physician and, as a result of its failure to use such reasonable care, the risk of harm to plaintiff, Verzicco, was increased resulting in the injuries and damages as set forth herein, thus, subjecting it to liability pursuant to 323 of the Restatement of Torts 2d;

(iii and iv) U.S. Health Care improperly instructed Leonard Harman, M.D. that it would not pay for the Halter Monitor causing him to discontinue its use after approximately one day and causing Dr. Harman to fail and refuse to read the results thereof, particularly when the continued use of the Halter Monitor was important for diagnosis and treatment based upon the complaints of Verzicco, and her history;

(v) Other acts of negligence of defendants, Dr. Leonard Harman, P.C. and Leonard Harman, M.D. pertaining to the medical treatment rendered to Verzicco. Complaint at 41(c)1.

▉ In our Memorandum Opinion of July 13, we found that all of the allegations in plaintiffs' negligence claim were predicated upon the negligence theory of "apparent" or "ostensible agency." Although an HMO is not usually liable for the negligence of the independent contractor physicians and health care providers that service the HMO members, an HMO may nevertheless be held liable if the health care provider is the "ostensible agent" of the HMO. *Boyd v. Albert Einstein Medical Center,* 377 Pa.Super. 609, 547 A.2d 1229 (1988).[3] At least with respect to paragraphs one, two and five of plaintiffs' negligence claim,

plaintiffs are seeking to hold U.S. Health Care vicariously liable for the actions of Verzicco's primary physician acting ostensibly as an agent of U.S. Health Care. As such, the allegations contained in these paragraphs do not rely on obligations under U.S. Health Care's benefits plan, but on the principles of professional malpractice. *See Kohn v. Delaware Valley HMO, Inc.,* C.A. No. 91–2745, 1991 WL 275609 (E.D.Pa. December 19, 1991) (Hutton, J); *Independence HMO, Inc. v. Smith,* 733 F.Supp. 983, 987–989 (E.D.Pa.1990). Our Court of Appeals recently opined, in *Painters of Philadelphia District Council No. 21 Welfare Fund v. Price Waterhouse,* 879 F.2d 1146 (3d Cir.1991), "that ERISA does not generally pre-empt state professional malpractice actions." *Id.* at 1153, n. 7. In rejecting the argument that an implied cause of action existed under ERISA for medical malpractice claims, the Court of Appeals stated:

> ... state law has traditionally prescribed the standards of professional liability and, in the absence of clear indicia in the act or legislative history, we are reluctant to ascribe to Congress an intention to intrude in this area. Far from there being clear indicia of an intent to create an implied professional malpractice cause of action under ERISA, there is not a scintilla of evidence that Congress had this in its mind ...

*Id.* at 1152–53. We, therefore, find that paragraphs one, two and five of plaintiffs' negligence claim are not pre-empted by ERISA.

▉ The allegations in paragraphs three and four of plaintiffs' negligence count, however, present a different story. In those paragraphs plaintiffs allege that U.S. Health Care improperly instructed Dr. Harman that it would not pay for the Halter Monitor. Plaintiffs are not seeking to hold U.S. Health Care liable on a vicarious basis for acts of negligence allegedly committed

---

**3.** In *Boyd,* the Pennsylvania Court found that "the two factors relevant to a finding of ostensible agency are: (1) whether the patient looks to the institution, rather than the individual physician for care, and (2) whether the HMO "holds out" the physician as its employee." 547 A.2d at

1233. In paragraph one of their negligence count, plaintiffs specifically allege that "Verzicco looked to U.S. Health Care for care and U.S. Health Care held out Dr. Leonard Harman, P.C. and Leonard Harman, M.D. as its employee."

by Dr. Harman while acting ostensibly as an agent of U.S. Health Care. Rather, plaintiffs seek to hold U.S. Health Care *directly* liable for refusing to pay for the Halter Monitor under its benefits plan. Such a claim for failure to provide funding clearly has a "connection with or reference to" a benefit plan. *See Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321 (5th Cir.1992). (Plaintiffs' claim that U.S. Health Care was negligent in failing to pre-certify payment for certain medical services held pre-empted by ERISA); *Kohn, supra* (plaintiffs' claim that the defendant HMO failed to provide funding to the plaintiff decedent's family for treatment that their own therapists prescribed for plaintiff decedent held pre-empted by ERISA). We, therefore, find that paragraphs three and four of plaintiffs' negligence count are pre-empted by ERISA.

Having found that all of plaintiffs' negligence claims with the exception of paragraphs three and four are not pre-empted by ERISA, we turn to plaintiffs' claims for misrepresentation and breach of contract against U.S. Health Care. In those claims, plaintiffs allege:

(i) U.S. Health Care intentionally misrepresented that each and every primary care physician, including Leonard Harman, M.D. and Dr. Leonard Harman, P.C., satisfied criteria for participation as a qualified physician after passing vigorous screening criteria established by U.S. Health Care and the primary care physician with whom Verzicco enrolled under the terms of the contract with U.S. Health Care would perform all necessary medical care and treatment and any diagnostic tests which were necessary, including referring Verzicco to a coronary care unit or hospital, if necessary;

(ii) Verzicco relied upon the statements of U.S. Health Care which were intentionally false and misleading, and, as a result of her reliance, she sustained the injuries described herein;

(iii) The misrepresentations and fraudulent utterances were intended by U.S. Health Care to cause Verzicco to act by subscribing to U.S. Health Care as an HMO and Verzicco justifiably relied upon the misrepresentations with resultant damages as the proximate result thereof;

(iv) The misrepresentations, even if innocent by U.S. Health Care, related to matters material to the choice and continued use of a health care provider by Verzicco since it was in such a character that if the misrepresentations had not been made, Verzicco would not have joined U.S. Health Care, or would not have chosen and continued to use Leonard Harman, M.D. as her primary care physician;

(i) U.S. Health Care through contracts and other documents that are within the possession of U.S. Health Care promised that the primary care physicians, including Leonard Harman, M.D., had to undergo vigorous screening and meet certain criteria to be qualified as a primary care physician for U.S. Health Care, and promised that Leonard Harman, M.D. did undergo this screening, met the criteria and was qualified as a primary care physician and that the patient would be referred by Leonard Harman, M.D. to appropriate specialists or hospitals as required for necessary medical treatment and Verzicco enrolled herself and her family with U.S. Health Care for all of her medical care and executed a contract with U.S. Health Care for U.S. Health Care to provide said medical care;

(ii) U.S. Health Care breached the provisions of the contract which required it to provide Verzicco with a qualified primary care physician to provide reasonably competent medical care, including appropriate referrals;

(iii) As a result of the breach, Verzicco suffered the injuries described herein. Complaint at 41(c)2, 3.

In our Memorandum Opinion of July 13, we lumped plaintiffs' misrepresentation and breach of contract claims with plaintiffs' negligence claim and found that all three claims attempted to hold U.S. Health Care liable in a vicarious capacity for the actions of Verzicco's primary care physician. Upon further reflection, however, we find that each of plaintiffs' three claims are separate and distinct from each other and must be considered individually.

**1292**

■ As noted above, the nature of plaintiffs' misrepresentation claim is that U.S. Health Care misrepresented that the primary care physician with whom Verzicco enrolled under the terms of the contract with U.S. Health Care would perform all necessary medical care and treatment. This claim obviously has a connection with or reference to a benefit plan as it is based on representations over the extent of and nature of the care provided under the benefit plan. Plaintiffs' claim for misrepresentation is, therefore, pre-empted by ERISA. *See Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923 (3d Cir.1990). (ERISA pre-empted state law claim for misrepresentation); *Bernatowicz v. Colgate–Palmolive Co.,* 785 F.Supp. 488, 493 (D.N.J.1992).

■ Plaintiffs' breach of contract claim is likewise pre-empted by ERISA. In that claim, plaintiffs allege that U.S. Health Care breached the provisions of the contract when it failed to provide Verzicco with a qualified primary care physician. Again, this claim obviously has a connection with a benefit plan, as it is based on an alleged contractual obligation under the benefit plan to provide for a qualified primary care physician. *See Pane v. R.C.A. Corp.,* 868 F.2d 631, 635 (3d Cir.1989); *Kohn, supra.*

■ The fact that ERISA may not offer a remedy for plaintiffs' pre-empted claims does not alter our conclusion. Although our Court of Appeals has not addressed the issue, the Courts of Appeals for the Fifth and Seventh Circuits have both held that a claim is still pre-empted under ERISA even if the plaintiff is left without a remedy. *See Corcoran, supra; Lister v. Stark,* 890 F.2d 941, 946 (7th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). *See also Weir v. Northwestern National Life Insurance Company,* 796 F.Supp. 846 (E.D.Pa.1992).

In sum, plaintiffs' claims against U.S. Health Care for misrepresentation, breach of contract and negligence (paragraphs three and four only) will be dismissed as pre-empted by ERISA. The remainder of the action, including the remainder of plaintiffs' negligence claim against defendant U.S. Health Care will be remanded to the Court of Common Pleas of Philadelphia County.

**ORDER**

The motion of the defendant U.S. Health Care Systems of Pennsylvania, Inc. for reconsideration is GRANTED in part and DENIED in part.

The motion of the defendant U.S. Health Care Systems of Pennsylvania, Inc. for certification is DENIED.

The Order of this Court dated July 13, 1992 is VACATED.

In its stead, it is ORDERED that:

The motion of the defendant United States Health Care Systems of Pennsylvania, Inc. to dismiss the complaint is GRANTED in part and DENIED in part.

The motion of the plaintiffs to remand is GRANTED in part and DENIED in part.

Plaintiffs' claims for misrepresentation, breach of contract and negligence (paragraphs three and four only) against U.S. Health Care are DISMISSED as pre-empted by ERISA.

The remainder of the action, including the remainder of plaintiffs' negligence claim against defendant U.S. Health Care is REMANDED to the Court of Common Pleas of Philadelphia County.

Defendant U.S. Health Care is not responsible for plaintiffs' attorney's fees and costs as originally stated in our July 13 Order.

The Clerk is DIRECTED to mark this case closed.

·IT IS SO ORDERED.