**Clare Davidson SCHACHTER, as Personal Representative of the Estate of Barbara Jean Davidson, Deceased, and Clare Davidson Schachter, Individually, for and on behalf of Clare Davidson Schachter, Jack Davidson, and Jill Davidson Rooney, as surviving children of Barbara Jean Davidson, Deceased, Plaintiff,**

v.

**PACIFICARE OF OKLAHOMA, INC., an Oklahoma corporation, and Rayburne W. Goen, M.D., Individually, and the Wheeling Medical Group, an Oklahoma Corporation, (now known as Wheeling/Omni, Inc.), Defendants.**

No. 94–C–203–BU.

United States District Court, N.D. Oklahoma.

March 16, 1995.

---

See 59 F.3d 151.

Gary L. Richardson, Raymond S. Allred, John M. Schroeder, Richardson Law Firm, Tulsa, OK, Brad Smith and Fred E. Stoops, Sr., Stoops Smith & Clancy, Tulsa, OK, for plaintiff.

R. Tom Hillis, Reuben Davis, Kimberly A. Lambert Love, Boone Smith Davis Hurst & Dickman, Tulsa, OK, Steven E. Holden and Malinda S. Matlock, Best Sharp Holden Sheridan Best & Sullivan, Tulsa, OK, for defendants.

### ORDER

BURRAGE, District Judge.

The plaintiff, Clare Davidson Schachter ("Schachter"), originally commenced this action in the District Court in and for Tulsa County, Oklahoma, individually and on behalf of Jack Davidson and Jill Davidson Rooney, surviving children of Barbara Jean Davidson, and as personal representative of the estate of Barbara Jean Davidson. The defendant, PacifiCare of Oklahoma, Inc. ("PacifiCare"), is a health maintenance organization, which furnished employee health care benefits for the employer of Schachter's deceased mother, Barbara Jean Davidson. The defendant, Rayburne W. Goen, M.D. ("Dr. Goen"), was at all times relevant to this action, the physician who provided medical care to Barbara Jean Davidson ("Davidson"). The defendant, The Wheeling Medical Group ("Wheeling"), was at all times relevant to this action, the employer of Dr. Goen.

In her third amended complaint, Schachter alleges that Davidson was admitted as a patient to St. John Medical Center in Tulsa, Oklahoma, with an acute abdomen and a huge hematoma in her lower right abdominal wall. She also alleges that Davidson was suffering from enlargement of the liver, painful abdomen with rebound and abnormally and severely small amounts of prothrombin in the circulating blood. According to Schachter, Dr. Goen told Davidson that she had pernicious anemia and that her prothrombin time was dangerously excessive and that she had massive bleeding-caused abdominal hematoma. Schachter alleges that even though Davidson was actively bleeding, she was dismissed from the hospital. Schachter further alleges that during the night following her dismissal, Davidson bled to death. Based upon these factual allegations, Schachter alleges that PacifiCare is liable (i) vicariously for the medical malpractice of its alleged ostensible agent, Dr. Goen, (ii) for fraud for allegedly inducing Davidson to rely upon PacifiCare for her health care, and (iii) for loss of consortium for the alleged wrongful death of Davidson.

PacifiCare timely removed this action to this Court pursuant to 28 U.S.C. § 1441 and § 1446 on the ground that Schachter's state law claims against PacifiCare are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* PacifiCare now moves for summary judgment on Schachter's claims pursuant to Rule 56, Fed.R.Civ.P. PacifiCare specifically argues that summary judgment is appropriate because Schachter's state law claims are preempted by ERISA and ERISA does not authorize recovery of damages for PacifiCare's alleged misconduct. It further argues that even if Schachter's claims are not preempted, summary judgment is appropriate as the undisputed facts show that Dr. Goen was not the ostensible agent of PacifiCare as alleged by Schachter.

Section 514(a) of ERISA provides that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit

plan." 29 U.S.C. § 1144(a). The ERISA preemption provision applies to state common and statutory law actions which "relate to" employee benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). The Supreme Court has stated that a state law "relates to" an employee benefit plan "in the normal sense, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). A state law may "relate to" a benefit plan "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)). Although the words "relate to" are to be construed expansively, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987), the scope of the ERISA preemption is not unlimited, *Ingersoll–Rand Co.*, 498 U.S. at 139, 111 S.Ct. at 483. State law will not be preempted when it has only "a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." *Greater Washington Bd. of Trade*, 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21, 77 L.Ed.2d at 503 (1983)). Similarly, "lawsuits against ERISA plans for run-of-the-mill claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan," are not preempted by Section 514(a). *Mackey v. Lanier Collection Agency and Serv., Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988).

No circuit courts have addressed ERISA's preemptive effect on a state law tort claim against a health maintenance organization based upon the theory of vicarious liability and/or theory of ostensible agency. The district courts which have addressed the issue are divided. Several courts have held that ERISA preempts a state law claim against a health maintenance organization for the negligence of one of its participating physicians. *See, Visconti by Visconti v. U.S. Health Care*, 857 F.Supp. 1097 (E.D.Pa.1994); *Dukes v. U.S. Health Care Systems of Pennsylvania, Inc.*, 848 F.Supp. 39 (E.D.Pa.1994); *Nealy v. U.S. Healthcare HMO*, 844 F.Supp. 966 (S.D.N.Y.1994); *Ricci v. Gooberman*, 840 F.Supp. 316 (D.N.J.1993); *Altieri v. Cigna Dental Health, Inc.*, 753 F.Supp. 61 (D.Conn. 1990). These courts have reasoned that a vicarious liability and/or ostensible agency claim "relates to" the benefit plan because it requires an examination of how the plan benefits are described to the beneficiary and how the relationship of the health maintenance organization to the care-provider is described. In addition, they have reasoned that the claim "relates to" the benefit plan because it is based on the circumstances of medical treatment provided pursuant to the benefit plan.

Other courts, however, have held that ERISA does not preempt a state law negligence claim against a health maintenance organization sued on the theory of vicarious liability and/or theory of ostensible agency. *See, Dearmas v. Av–Med, Inc.*, 865 F.Supp. 816 (S.D.Fla.1994); *Paterno v. Albuerne*, 855 F.Supp. 1263 (S.D.Fla.1994); *Burke v. Smithkline Bio–Science Laboratories*, 858 F.Supp. 1181 (M.D.Fla.1994); *Kearney v. U.S. Healthcare, Inc.*, 859 F.Supp. 182 (E.D.Pa.1994); *Smith v. HMO Great Lakes*, 852 F.Supp. 669 (N.D.Ill.1994); *Independence HMO v. Smith*, 733 F.Supp. 983 (E.D.Pa.1990); *Elsesser v. Hosp. of Phil. Col. of Osteopathic Med.*, 802 F.Supp. 1286 (E.D.Pa.1992). In reaching their decisions, these courts have concluded that a vicarious liability and/or ostensible agency claim against a health maintenance organization is not sufficiently "related to" ERISA so as to warrant preemption. *Id.*

■ Having reviewed the cases addressing the issue, the Court concurs with the reasoning of the courts which have held that ERISA does not preempt a state law tort claim brought against a health maintenance organization premised upon vicarious liability and/or ostensible agency. The Court specifically finds the court's analysis in *Kearney* persuasive. In the Court's view, the court in *Kearney* correctly opined that the question of a doctor's negligence does not require

reference to a benefit plan in order to determine whether the service provided was that which was promised. As articulated by the *Kearney* court:

"A determination that a treating physician committed malpractice does not require examination of the plan to decide whether the service provided was that which was promised. What is required is evidence of what transpired between the patient and physician and an assessment of whether in providing admittedly covered treatment or giving professional advice the physician possessed and utilized the knowledge, skill and care usually had and exercised by physicians in his community or medical specialty. As noted, a claim that one was denied a promised benefit is preempted. A claim that one received promised service from a provider who performed that service negligently is another matter."

*Kearney*, 859 F.Supp. at 186.

The Court also opines that the *Kearney* court properly reasoned that any reference to the plan to determine the issue of agency does not implicate the concerns of the ERISA preemption provision. *Id.* A medical malpractice action, such as that at issue in the instant case, does not involve a claim for benefits, a claim to enforce rights under the benefit plan or a claim challenging administration of the benefit plan. It simply involves a claim that the deceased received allegedly negligent treatment from a doctor who was "held out" by the health maintenance organization as its agent. The action only requires a determination that the services provided deviated from the applicable standard of care. In the Court's view, such action affects the benefit plan, if at all, "in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

■ PacifiCare has argued that the cases finding no ERISA preemption are not well reasoned because they differentiate between direct and indirect negligence claims against a health maintenance organization. The Court disagrees. The cases involving direct negligence claims against the health maintenance organization arose because of the way the health maintenance organization administered plan benefits. *Kuhl v. Lincoln Nat'l Health Plan*, 999 F.2d 298, 303 (8th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) (malpractice claim against health maintenance organization for delaying heart surgery stemming from administration of benefits); *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1332–34 (5th Cir.), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992) (malpractice claim against health maintenance organization based upon utilization review decision that hospitalization was not medically necessary); *Elsesser, supra.* (malpractice claim for failure to provide funding for medical device). In this case, Plaintiff's claim does not arise from PacifiCare's administration of benefits, or the type of benefits provided by PacifiCare. Rather, it is based on alleged substandard treatment provided by a treating physician. Therefore, the Court finds that the differentiation between direct and indirect negligence claims is compelling.

[8] In addition to the medical malpractice claim based upon the theory of vicarious liability and/or the theory of ostensible agency, Schachter has alleged a fraud claim. The Court agrees with PacifiCare that the fraud claim alleged by Schachter, "relates to" the employee benefit plan and is preempted by Section 514(a) of ERISA. *Kearney*, 859 F.Supp. at 184–185; *Elsesser*, 802 F.Supp. at 1292; *Nealy*, 844 F.Supp. at 972; *Altieri*, 753 F.Supp. at 64. The Court, therefore, concludes that PacifiCare is entitled to summary judgment in regard to that claim.[1]

[9] The last claim for which Schachter seeks recovery of damages is loss of consortium. The Court finds that preemption does not apply to this particular claim because the health care plan is not implicated. Schachter can recover for loss of consortium without reference to the plan or the actions by Pacifi-

---

1. Since Schachter has failed to allege any facts giving rise to a fraud claim under ERISA, this Court presumes that no such claim exists and therefore finds that summary judgment on the pending fraud claim is appropriate.

Care pursuant to the plan. Therefore, the loss of consortium claim does not relate to the employee benefit plan and is not preempted by ERISA. *See, Dearmas, supra.*

This action was removed to this Court on the basis of the complete preemption doctrine under ERISA. *See, Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The Court has found that Schachter's fraud claim is preempted and has granted summary judgment in regard to that claim. Since the remainder of this action involves pendent state law claims, the Court, in its discretion, declines to exercise its supplemental jurisdiction over those claims. 28 U.S.C. § 1367(c)(3). These claims shall be remanded to the District Court in and for Tulsa County, Oklahoma for adjudication.

Based upon the foregoing, the defendant, PacifiCare of Oklahoma, Inc.'s Motion for Summary Judgment (Docket No. 58) is GRANTED to the extent it seeks judgment that Schachter's fraud claim is preempted under ERISA and is DENIED to the extent it seeks judgment that Schachter's medical malpractice claim based upon the theory of vicarious liability and/or the theory of ostensible agency and loss of consortium claim are preempted. The Court REMANDS the remainder of this action to the District Court in and for Tulsa County, Oklahoma. In light of the Court's decision to remand this action, the Court declares MOOT the defendant PacifiCare of Oklahoma, Inc.'s Motion for Summary Judgment (Docket No. 58) to the extent that it seeks judgment on the merits of Schachter's medical malpractice based upon the theory of vicarious liability and/or the theory of ostensible agency. The Court also declares MOOT the defendants, Rayburne W. Goen, M.D. and The Wheeling Medical Group's Motion in Limine (Docket No. 60).